```
 1  Robert D. Hoffman - State Bar No. 123458
    E-mail: rhoffman@crwllp.com
 2  CHARLSTON, REVICH & WOLLITZ LLP
    1925 Century Park East, Suite 1250
 3  Los Angeles, California 90067-2746
    Tel: (310) 551-7016 • Fax: (310) 203-9321
 4
    Attorneys for Plaintiff,
 5  AmTrust International Underwriters Limited
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMTRUST INTERNATIONAL UNDERWRITERS LIMITED, an Irish corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAW OFFICES OF HOWARD S. FISHER, a California sole proprietorship; HOWARD S. FISHER, a California resident; RONALD V. SWANSON, a California resident; DONNA KAY SWANSON, a California resident; ROBERT K. PASCHALL, a California resident; JOAN L. PASCHALL, a California resident,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT OF AMTRUST INTERNATIONAL UNDERWRITERS LIMITED FOR DECLARATORY RELIEF RE CLAIM AGAINST LAW OFFICES OF HOWARD S. FISHER AND HOWARD S. FISHER BY SWANSONS AND PASCHALLS SUBJECT TO SINGLE LIMIT OF LIABILITY UNDER LAWYERS PROFESSIONAL LIABILITY POLICY** |

## I.   INTRODUCTION

1. AmTrust International Underwriters Limited ("AmTrust") seeks a judicial determination that pursuant to the related claim provision in the Lawyers Professional Liability Policy issued by AmTrust to the Law Offices of Howard S. Fisher Attorneys at Law ("Fisher Firm") bearing policy No. PAL1044041 01 for

the policy period May 18, 2014 to May 18, 2015 ("Policy"), the claim ("Claim") against the Fisher Firm and Howard S. Fisher ("Fisher") (collectively "Fisher Firm Parties") by Ronald V. Swanson ("Swanson") and Donna Kay Swanson (collectively "Swansons") and Robert K. Paschall ("Paschall") and Joan L. Paschall (collectively "Paschalls") (the Swansons and Paschalls collectively "Claimants") being defended by AmTrust pursuant to the Policy constitutes a single claim subject to the single per claim Limit of Liability of $500,000 under the Policy with such limit reduced by covered **claim expenses** and a single $20,000 deductible, and not two (2) separate per claim limits of $500,000 subject to the $1,000,000 aggregate Limit of Liability under the Policy nor two (2) separate $20,000 deductibles.

2. The Fisher Firm Parties represented Claimants in connection with certain Internal Revenue Service ("IRS") proceedings in which the IRS sought to recover from Claimants certain amounts for excise taxes, penalties and interest in connection with an alleged abusive tax shelter scheme allegedly recommended to Claimants by an accountant with the accounting firm Grant Thornton ("GT") in which Claimants converted funds held in traditional IRA accounts to Roth IRA accounts ("Roth Restructure") through a series of transactions involving certain wholly owned corporations.

3. Claimants have asserted that in connection with the Fisher Firm's representation of Claimants relating to the Roth Restructure, the Fisher Firm Parties failed to enter into certain tolling agreements issued by counsel for GT in 2008 such that certain purported potential claims ("Potential Claims") of Claimants against GT and certain other parties ("GT Parties") involved in the Roth Restructure became time barred.

4. Pursuant to the provisions contained in Section III.D. ("Related Claim Provision") of the Lawyers Professional Liability Policy coverage form (Form LPL-POL-01 Ed. 0712) ("LPL Form") of the Policy, "the Limits of Liability shown in the Declarations are subject to the provisions of this Policy and are the amount

the **Company** will pay regardless of the number of **Insureds, claims** or persons or entities making **claims**" and that all "**related claims,** whenever made, shall be considered a single **claim** first made and reported to the **Company** during the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company.**" The term "**related claims**" is defined in Section II.M. of the LPL Form to mean "all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**" with the term "**related acts or omissions**" defined in Section II.L. of the LPL Form to mean "all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."

5. AmTrust seeks a declaration that pursuant to the Related Claim Provision, the Claim asserted by Claimants against the Fisher Firm Parties for allegedly failing to have entered into the 2008 GT tolling agreements and/or otherwise allegedly failing to prevent the Potential Claims by Claimants against the GT Parties regarding the Roth Restructure from allegedly becoming time barred constitutes a single claim subject to a single $500,000 Limit of Liability under the Policy and a single deductible of $20,000 and not two (2) separate Claims subject to two (2) separate $500,000 Limits of Liability and two (2) separate deductibles of $20,000.

6. AmTrust also seeks a declaration that upon the exhaustion of the single $500,000 per claim Limit of Liability applicable to the Claim from payments by AmTrust for covered **claim expenses** and/or covered **damages** that no further coverage exists under the Policy for the Claim such that AmTrust has no duty to defend the Claim and/or indemnify any amounts relating to the Claim after that $500,000 Limit of Liability has been exhausted.

## II. THE PARTIES

7. At all times herein mentioned, AmTrust was and is, a corporation organized and existing under the laws of the Republic of Ireland, with its principal place of business in the United States located in Cleveland, Ohio and is a citizen of Ireland and the State of Ohio.

8. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, Fisher was and is a resident domiciled in the State of California and a citizen of the State of California.

9. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, the Fisher Firm is a sole proprietorship of Fisher, a citizen of the State of California such that the Fisher Firm is also a citizen of the State of California.

10. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, Ronald V. Swanson was and is a resident domiciled in the State of California and a citizen of the State of California.

11. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, Donna Kay Swanson was and is a resident domiciled in the State of California and a citizen of the State of California.

12. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, Robert K. Paschall was and is a resident domiciled in the State of California and a citizen of the State of California.

13. AmTrust is informed and believes, and thereon alleges, that at all times herein relevant, Joan L. Paschall was and is a resident domiciled in the State of California and a citizen of the State of California.

14. The Swansons and the Paschalls, who do not qualify as Insureds under the Policy, have been named as defendants in this action so as to bind them to any judicial determination herein regarding AmTrust's requests for declaratory relief with respect to coverage issues regarding the Limit of Liability of the Policy

applicable to the Claim. AmTrust is amenable to dismissing the Swansons and Paschalls from this action without prejudice pursuant to a stipulation and order that they agree to be bound by the judicial determinations made herein.

### III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States, in that AmTrust is a corporation domiciled in Ireland with its principal place of business in the United States in Cleveland, Ohio, and thus a citizen of Ireland and the State of Ohio, whereas all defendants are citizens of the State of California. The amount in controversy is in excess of the sum of $75,000, exclusive of interest and costs in that counsel for Claimants has asserted that the Claim involves two (2) separate claims against the Fisher Firm Parties each subject to a separate per claim Limit of Liability of $500,000 in connection with the $1,000,000 aggregate Limit of Liability whereas AmTrust contends that pursuant to the Related Claim Provision, the Claim involves a single Claim subject to a single $500,000 per claim Limit of Liability.

16. Pursuant to 28 U.S.C. §1391(a), venue is appropriate in the Central District of California because jurisdiction is founded upon diversity of citizenship, with the defendants named herein subject to personal jurisdiction in this district at the time this action was commenced, and AmTrust is informed and believes and thereon alleges that the acts giving rise to the claims for relief asserted herein, including the delivery of the Policy to the Fisher Firm, the Fisher Firm's retention by Claimants and the services rendered by the Fisher Firm on behalf of the Claimants, including but not limited to, the litigation of the tax cases involving the IRS and Claimants arose in the Central District of California.

## IV. FACTUAL BACKGROUND

### A. THE ROTH RESTRUCTURE

17. AmTrust is informed and believes and thereon alleges that in or about 2000, Paschall first met with A. Blair Stover, Jr. ("Stover") of GT about the Roth Restructure.

18. AmTrust is informed and believes and thereon alleges that in or about March 2000, Swanson first met with Stover of GT about the Roth Restructure.

19. AmTrust is informed and believes and thereon alleges that on or about March 17, 2000, Paschall executed an engagement letter with GT for professional tax and financial consulting services with respect to the Roth Restructure.

20. AmTrust is informed and believes and thereon alleges that on or about April 11, 2000, Swanson executed an engagement letter with GT for professional tax and financial consulting services with respect to the Roth Restructure.

21. AmTrust is informed and believes and thereon alleges that the engagement letters signed by Paschall and Swanson ("Engagement Letters") each contained a clause that provided that GT would represent and defend the Paschalls and Swansons and any related entity at no additional cost in case of an audit by the IRS relating to the Roth Restructure.

22. AmTrust is informed and believes and thereon alleges that the Engagement Letters signed by Paschall and Swanson each contained a clause that provided that GT would reimburse and indemnify the Paschalls and Swansons for any civil negligence or fraud penalty assessed against them by any federal or state authorities relating to the Roth Restructure.

23. AmTrust is informed and believes and thereon alleges that Paschall and Swanson each paid a $120,000 fee for the Roth Restructure.

24. AmTrust is informed and believes and thereon alleges that the Engagements Letters provided that the $120,000 fee paid by Paschall and Swanson would be equally split between GT and the law firm Nevada Corp. Association ("NCA").

25. AmTrust is informed and believes and thereon alleges that on March 20, 2000, NCA formed certain corporations for the Paschalls and the Swansons to implement the Roth Restructure.

26. AmTrust is informed and believes and thereon alleges that on March 20, 2000, NCA formed Telesis Acquisition and Investment Co., Inc. ("Telesis"), and West Star Global Holdings, Inc. ("West Star") with the same principal place of business and that Paschall served as president, secretary, and treasurer of both of those corporations in connection with certain transactions relating to the Roth Restructure.

27. AmTrust is informed and believes and thereon alleges that on March 20, 2000, NCA formed Sierra West Global Holdings, Inc. ("Sierra West") that was joined by NCA with Northstar Acquisition and Investment Co., Inc. ("Northstar"), that had been formed by NCA sometime in the first 6 months of 2000 with Sierra West and Northstar sharing the same registered agent and registered office and that Swanson served as president, secretary, and treasurer of both of those corporations during 2000 and 2001 in connection with certain transactions relating to the Roth Restructure.

28. AmTrust is informed and believes and thereon alleges that on or about March 2000 and May 1, 2000, Paschall and Swanson respectively, opened a Self-Directed Roth IRA at George K. Baum Trust Co. ("Baum Roth IRA") and each deposited $2,000 into those accounts from prior investment accounts as part of the Roth Restructure.

29. AmTrust is informed and believes and thereon alleges that on or about March 20, 2000 and April 25, 2000, Paschall and Swanson respectively, opened a

Roth IRA account with First Union Securities, Inc., ("First Union Roth IRA") in connection with the Roth Restructure.

30. AmTrust is informed and believes and thereon alleges that on or about March 22, 2000 and April 28, 2000, Paschall and Swanson respectively, opened a Self-Directed Traditional IRA at the First Trust Company of Onaga ("FNBO IRA") in connection with the Roth Restructure.

31. AmTrust is informed and believes and thereon alleges that on or about March 30, 2000 and May 5, 2000, Paschall and Swanson, respectively, funded their FNBO IRA with a rollover from pre-existing retirement accounts with Paschall rolling over $1,207.822.50 from a thrift and savings account with his former employer Hughes Global Services ("Hughes Account") and Swanson rolling over $1,391,941.64 from a traditional IRA account with Resources Trust ("Resources Trust IRA") in connection with the Roth Restructure.

32. AmTrust is informed and believes and thereon alleges that on or about March 27, 2000 and May 2, 2000, Paschall and Swanson, respectively caused their Baum Roth IRA to purchase for $2,000 all of the shares of Telesis and all of the shares of Northstar in connection with the Roth Restructure.

33. AmTrust is informed and believes and thereon alleges that on or about March 30, 2000 and May 5, 2000, Paschall and Swanson, respectively caused their FNBO IRA to be funded with a rollover of $1,391,941.64 from the Resources Trust IRA and $1,207,802.55 from the Hughes Account in connection with the Roth Restructure.

34. AmTrust is informed and believes and thereon alleges that on or about that on or about April 26, 2000 and May 19, 2000, Paschall and Swanson, respectively caused their FNBO IRA to acquire all of the shares of West Star and Sierra West for $1,392.801.96 and $1,207,802.55 in connection with the Roth Restructure.

35. AmTrust is informed and believes and thereon alleges that on or about April 26, 2000 and May 22, 2000, Paschall and Swanson, respectively caused West Star to transfer $1,272,801.96 to Telesis and Sierra West to transfer $1,087,802.55 to Northstar in connection with the Roth Restructure.

36. AmTrust is informed and believes and thereon alleges that on or about April 28, 2000 and May 22, 2000, Paschall and Swanson, respectively caused Telesis to transfer $1,272,801.96 to Paschall's Baum Roth IRA and Northstar to transfer $1,238.000 to Swanson's Baum Roth IRA in connection with the Roth Restructure.

37. AmTrust is informed and believes and thereon alleges that on or about April 28, 2000 and by January 8, 2001, Paschall and Swanson, respectively caused $1,272,801.96 and $1,610,000 to be transferred from their Baum Roth IRA to the First Union Roth IRA in connection with the Roth Restructure.

38. AmTrust is informed and believes and thereon alleges that Paschall and Swanson, respectively caused amounts in the First Union Roth IRA to be invested in various publicly traded securities and mutual funds and/or annuities.

39. AmTrust is informed and believes and thereon alleges that in or about December 2001, Telesis was merged into West Star and Sierra West was merged into Northstar with each of those surviving entities later dissolved in connection with the Roth Restructure.

**B. THE RECOVERY OF AMOUNTS FROM CLAIMANTS BY THE IRS BECAUSE OF THEIR EXCESS CONTRIBUTIONS TO ROTH IRAS BECAUSE OF THE ROTH RESTRUCTURE**

40. AmTrust is informed and believes and thereon alleges that on February 1, 2008 and July 23, 2008, the IRS issued notices of deficiency to the Paschalls to collect amounts for claimed deficiencies, additions to tax, and penalties for the tax

years 2002 through 2006 in connection with the Roth Restructure on the grounds that the amounts transferred to the Roth IRA constituted an excess contribution to avoid paying federal income tax.

41.   AmTrust is informed and believes and thereon alleges that the IRS claimed that the entire $1,272,801.96 contribution from Telesis to the Baum Roth IRA on April 28, 2000 constituted an excess contribution with the IRS asserting that the Paschalls owed the IRS $531,310.15 comprised of $425,513.15 for the deficiency, $103,477.00 for the additions to tax and $2,320.00 for penalties.

42.   AmTrust is informed and believes and thereon alleges that on October 6, 2008, the IRS issued three (3) notices of deficiency to the Swansons for the tax years 2001 through 2006 and 2007 and sought certain Section 6662(a) accuracy-related penalties in connection with the Roth Restructure on the grounds that the amounts transferred to the Roth IRA allegedly constituted an excess contribution to avoid paying federal income tax.

43.   AmTrust is informed and believes and thereon alleges that the IRS claimed that the Swansons had made an excess contribution of $1.61 million into a Roth IRA and that the IRA claimed that the Swansons owed the IRS deficiencies, additions to tax and penalties of $1,429,259.80.

C.   **THE FISHER FIRM'S REPRESENTATION OF THE CLAIMANTS**

44.   AmTrust is informed and believes and thereon alleges that in 2008, after the Claimants had received notices of deficiency from the IRS regarding the Roth Restructure, that Claimants retained the Fisher Firm to represent them with respect to amounts sought to be collected from Claimants by the IRS and to pursue the Potential Claims against the GT Parties in connection with Claimants' alleged losses from the Roth Restructure.

45. AmTrust is informed and believes and thereon alleges that in or about April 2008 and September 2008, the Swansons and the Paschalls, respectively, retained the Fisher Firm to defend the IRS claims and to pursue the Potential Claims against the GT Parties.

46. AmTrust is informed and believes and thereon alleges that on or about October 13, 2008, Fisher sent a letter to GT notifying GT of the Potential Claims in connection with the Roth Restructure.

47. AmTrust is informed and believes and thereon alleges that on or about October 24, 2008, counsel for GT sent to Fisher proposed tolling agreements ("2008 Tolling Agreements") to be signed by Claimants to toll for a period of one year certain statute of limitations with respect to the Proposed Claims.

48. AmTrust is informed and believes and thereon alleges that the Fisher Firm represented the Claimants in the following actions in the United States Tax Court in Los Angles: *Swanson v. C.I.R.*, 102 T.C.M. (CCH) 6 (T.C. 2011) ("Swanson Tax Case") and *Paschall v. C.I.R.*, 137 T.C. 8 (2011) ("Paschall Tax Case") in connection with certain petitions filed in the United States Tax Court in Los Angeles by Fisher on behalf of Claimants with respect to certain amounts that the IRS sought to collect from Claimants in connection with the Roth Restructure.

49. AmTrust is informed and believes and thereon alleges that on July 5, 2011, the Tax Court ruled in favor of the IRS in the Swanson Tax Case and held that the Swansons were liable for certain Internal Revenue Code ("I.R.C.") Section 6662(a) accuracy-related penalties for their 2001 through 2006 tax years in connection with having made an excess contribution of $1.61 million into a Roth IRA.

50. AmTrust is informed and believes and thereon alleges that on July 5, 2011, the Tax Court ruled in favor of the IRS in the Paschall Tax Case and held that the Paschalls were liable for certain excise tax deficiencies and additions to tax

under Sec. 6651(a)(1), I.R.C., for their 2002 through 2006 tax years in connection with having made an excess contribution of $1,272,801.96 into a Roth IRA.

### D. THE CLAIMS AGAINST THE FISHER FIRM PARTIES BY THE CLAIMANTS

51. AmTrust is informed and believes and thereon alleges that following the rulings in the Swanson and Paschall Tax Cases that Fisher and attorney David Lee Rice ("Rice") sought to pursue the Potential Claims against the GT Parties.

52. AmTrust is informed and believes and thereon alleges that according to Rice, demand letters were sent to GT in or about July 2013 and March 2014 in connection with the Potential Claims and that in or about June 2014 GT allegedly advised Rice that certain of the Potential Claims were time barred under the applicable statute of limitations.

53. On July 15, 2014, Fisher notified AmTrust that he was reporting a claim pursuant to the Policy regarding the assertion that certain of the Potential Claims were allegedly time barred.

54. On February 25, 2015, AmTrust was notified by Fisher that Rice had informed Fisher that Claimants were pursuing a legal malpractice claim against the Fisher Firm Parties in connection with their alleged failure to enter into the 2008 Tolling Agreements or to allegedly otherwise protect against the statute of limitations from allegedly expiring as to the Potential Claims of Claimants against GT relating to the Roth Restructure.

55. AmTrust in response to that February 25, 2015 notice appointed defense counsel to defend the Claim asserted by Claimants against the Fisher Firm Parties.

56. AmTrust is informed and believes that counsel for Claimants has asserted that the Claim should be subject to two (2) per claims Limits of Liability of

$500,000 under the Policy.

57. On May 26, 2015, AmTrust notified the Fisher Firm Parties that pursuant to the Related Claim Provision, the Claim constitutes a single claim subject to the single per claim Limit of Liability of $500,000 under the Policy with such limit reduced by covered **claim expenses** and subject to a single $20,000 deductible.

### E.   THE POLICY

58. On May 19, 2014, the Policy was issued to the Fisher Firm and Item 4. of the Lawyers Professional Liability Policy Declarations to the Policy ("Declarations") entitled "Limits of Liability (Includes **Claim Expenses**)" referred to a Per Claim Limit of Liability of $500,000 and an Aggregate Limit of Liability of $1,000,000."

59. A true and correct copy of the Policy, without the application, is attached hereto as Exhibit "A" and incorporated herein by this reference.

60. Item 6. of the Declarations referred to a deductible under the Policy of "$20,000 per claim."

61. The LPL Form of the Policy contains the following insuring agreements:

> A. Coverage
>
> The **Company** will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:
>
> 1. prior to the inception date of the **policy period,** the **Insured** did not give notice under any other insurance policy of such **claim** or **related claim** or such act or omission or **related act or omission;** and
>
> 2. prior to the inception date of the first policy, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the Company, no **Insured** knew of could reasonably have foreseen that any such act or omission, or **related act or omission,** might be expected to be the basis of a **claim.**

The **Company** shall also pay **claim expenses** in connection with such **claim**.

B. Defense

The **Company** shall have the right and duty to defend, subject to and as part of the Limits of Liability, any **claim** against the **Insured** seeking **damages** which are payable under the terms of this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as it deems appropriate. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbiters or mediators and in the conduct of an arbitration or mediation proceeding.

C. Settlement

The **Company** shall have the right to negotiate a settlement or compromise of a **claim** as it deems appropriate but shall not commit to settlement of a **claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or compromise recommended by the **Company** and acceptable to the claimant, then the **Company's** Limits of Liability under this Policy shall be reduced to the amount for which the **claim** could have been compromised or settled, plus all **claim expenses** incurred up to the time the **Company** makes its recommendation, which amount shall not exceed the remainder of the Limits of Liability specified in Section III. A.

D. Exhaustion of limits

The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay, or settle a **claim** after the applicable Limits of Liability have been exhausted by payment of **damages** and/or **claim expenses,** or any combination thereof, or after the **Company** has deposited the remaining Limits of Liability into a court of competent jurisdiction in satisfaction of a judgment. In such case, the **Company** shall have the right to withdraw from further investigation, defense, payment or settlement of such **claim** by tendering control of said investigation, defense or settlement of the **claim** to the **Insured**. The **Company** will initiate and cooperate in the transfer of control to the **Named Insured** of any **claims** which were reported to the **Company** prior to the exhaustion of such limit and the **Named Insured** must cooperate in the transfer of control of such **claims**. The **Company** agrees to take the necessary steps, as it deems appropriate, to avoid a default in such **claims** until the transfer has been completed, provided the **Named Insured** is cooperating in such transfer. The **Named Insured** must reimburse the **Company** for expenses it incurs in taking those steps it deems appropriate to avoid a default during the transfer of control.

62. The Limits of Liability and Deductible portion of the LPL Form of the Policy contains in part the following provisions including regarding "Multiple Insureds, Claims and Claimants:"

A. Limits of Liability - Each Claim

Subject to paragraph B. below, the Limits of Liability of the **Company** for each **claim** shall not exceed the amount stated in the Declarations for each **claim.**

B. Limits of Liability - In the Aggregate

The Limits of Liability of the **Company** for all **claims** shall not exceed the amount stated in the Declarations as the aggregate.

C. Deductible

       The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for each and every **claim** and applies to the payment of **damages** and **claims expenses.** The deductible shall be paid by the **Named Insured** or, upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds.** The Limits of Liability set forth in the Declarations are in addition to and in excess of the deductible.

   D.    Multiple Insureds, Claims and Claimants

       The Limits of Liability shown in the Declarations are subject to the provisions of this Policy and are the amount the **Company** will pay regardless of the number of **Insureds, claims** or persons or entities making **claims.** If **related claims** are subsequently made against the **Insured** and reported to the **Company** during the **policy period** or any subsequent renewal or Extended Reporting Period, all such **related claims,** whenever made, shall be considered a single **claim** first made and reported to the **Company** during the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company.** The Limits of Liability for any such **related claims** shall be part of, and not in addition to, any remaining Limits of Liability as stated in the Declarations of the policy.

("Related Claim Provision").

63.    The following are definitions of certain terms that appear in the Policy:

Wherever used in this Policy:

   A.    **"Claim"** means a written or verbal demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury,** in rendering or failing to render **legal services.** A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured.**

\* \* \*

   D.    **"Damages"** means judgments, awards and settlement if negotiated with the assistance and approval of the **Company. Damages** do not include:

1. Legal fees, costs and expenses paid to or incurred or charged by the **Insured,** whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2. Return or replenishment of client or other funds that the **Insured** commingled, converted, misused, misappropriated or was not otherwise entitled to, regardless of whether such funds are received in the form of a loan, retainer, contingency or otherwise;

3. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing;

4. punitive or exemplary amounts and the multiplied portion of multiplied awards;

5. injunctive or declaratory relief;

6. amounts for which the **Insured** is not financially liable or that are without legal recourse to the **Insured.**

\* \* \*

   G.    **"Legal services"** mean:

       1.    those services performed by an **Insured** for others as a lawyer, arbiter, mediator,

        title agent, a notary public, or member of a bar association, ethics, peer review or similar professional board or committee but only if such services are performed for a fee that inures to the benefit of the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono) services are performed and approved by the **Named Insured.** Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

    2.    those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in a fiduciary capacity excluding acts of a "fiduciary" as defined under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law. Services performed by an **Insured** as an administrator, executor or trustee must be services ordinarily rendered by a lawyer and with the approval of the **Named Insured** at the time of retention.

\* \* \*

L.    "**Related act or omission**" means all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

M.    "**Related claim**" means all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services.**

## FIRST CLAIM FOR RELIEF

(Declaratory Relief - Single Limit of Liability)

64.    AmTrust refers to the foregoing paragraphs 1 through 63 and incorporates the same herein by this reference.

65.    An actual controversy has arisen and now exists between AmTrust and the Fisher Firm Parties in that AmTrust contends, and is informed and believes, that the Fisher Firm Parties deny, that the Claim against the Fisher Firm Parties by Claimants being defended by AmTrust pursuant to the Policy constitutes a single claim under the Related Claim Provision of the Policy so as to be subject to the single per claim limit of liability of $500,000 under the Policy and a single $20,000 deductible and not two (2) separate per claim limits of $500,000 subject to the $1,000,000 aggregate limit of liability under the Policy nor two (2) separate $20,000 deductibles.

66.    AmTrust seeks, and is entitled to obtain, a judicial declaration that the Claim by Claimants against the Fisher Firm Parties constitutes a single claim

pursuant to the Related Claim Provision of the Policy so as to be subject to the single per claim limit of liability of $500,000 that is reduced by covered **claim expenses** under the Policy and a single $20,000 deductible and not two (2) separate claims subject to the $1,000,000 aggregate limit of liability under the Policy nor two (2) separate $20,000 deductibles.

## SECOND CLAIM FOR RELIEF

(Declaratory Relief – No Duty to Defend or Indemnify Upon Exhaustion of Single $500,000 Limit of Liability Applicable to the Claim)

67. AmTrust refers to the foregoing paragraphs 1 through 66 and incorporates the same herein by this reference.

68. An actual controversy has arisen and now exists between AmTrust and the Fisher Firm Parties in that AmTrust contends, and is informed and believes, that the Fisher Firm Parties deny, that upon exhaustion of the single $500,000 per claim Limit of Liability under the Policy applicable to the Claim from payments for covered **claim expenses** and/or covered **damages**, that no further coverage exists under the Policy relating to the Claim such that AmTrust has no duty to defend the Claim and/or indemnify any amount relating to the Claim after that $500,000 Limit of Liability has been exhausted.

69. Section I.D. of the LPL Form of the Policy provides, in part, that AmTrust "is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay, or settle a claim after the applicable Limits of Liability have been exhausted by payment of **damages** and/or **claim expenses**, or any combination thereof…." such that once the single $500,000 per claim Limit of Liability has been exhausted with respect to the payment of covered **damages** and/or covered **claim expenses** in connection with the Claim no coverage exists under the Policy for any amounts incurred relating to the Claim.

70. AmTrust seeks, and is entitled to obtain, a judicial declaration that

upon the exhaustion of the single $500,000 per claim Limit of Liability applicable to the Claim from payments by AmTrust for covered **claim expenses** and/or covered **damages** that no further coverage exists under the Policy for the Claim such that AmTrust has no duty to defend the Claim and/or indemnify any amounts relating to the Claim after that $500,000 Limit of Liability has been exhausted.

WHEREFORE, AmTrust prays for judgment as follows:

1. For a declaration that the Claim by Claimants against the Fisher Firm Parties constitutes a single claim pursuant to the Related Claim Provision of the Policy and subject to the single per claim limit of liability of $500,000 that is reduced by covered **claim expenses** under the Policy and a single $20,000 deductible;

2. For a declaration that that upon the exhaustion of the single $500,000 per claim Limit of Liability applicable to the Claim from payments by AmTrust for covered **claim expenses** and/or covered **damages** that no further coverage exists under the Policy for the Claim such that AmTrust has no duty to defend the Claim and/or indemnify any amounts relating to the Claim after that $500,000 Limit of Liability has been exhausted.

3. For such other and further relief as the Court deems appropriate.

DATED: August 19, 2015           CHARLSTON, REVICH & WOLLITZ LLP
                                 ROBERT D. HOFFMAN


                                 By:   /s/Robert D. Hoffman
                                       Robert D. Hoffman
                                 Attorneys for Plaintiff
                                 AmTrust International Underwriters Limited